```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
NATALIA MALAVE,                                              :
                                                             :
                                                             :
                              Plaintiff,                     :    MEMORANDUM & ORDER
                                                             :
                                                             :    19-cv-5534 (ENV) (SJB)
          -against-                                          :
                                                             :
                                                             :
                                                             :
NYPD SERGEANT TREVOR AUSTIN,                                 :
                                                             :
                                                             :
                              Defendant.                     :
------------------------------------------------------------ x
```

VITALIANO, D.J.

      Plaintiff Natalia Malave commenced this action against Sergeant Trevor Austin of the New York City Police Department ("NYPD"), who was assigned to the school safety unit patrolling New York City's public schools, alleging, pursuant to 42 U.S.C. § 1983, that defendant violated her constitutional rights under the Fourth and Fourteenth Amendments by using excessive force against her when trying to stop her from fighting with another student.[1] Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

---

[1] The operative complaint is the third amended complaint. *See* Third Am. Compl., Dkt. 12. At the time of the filing of the first complaint, Malave was a minor, represented by her mother Jasmine Jimenez, and she sued only the City of New York. *See* Compl., Dkt. 1. On February 27, 2020, Malave filed second and third amended complaints, now proceeding as an adult under her own name and naming only Sergeant Austin as a defendant. *See* Second Am. Compl., Dkt. 10; Third Am. Compl. ¶¶ 5–6 (differing only in that third amended complaint changes Austin's title from "School Safety Agent" to "Sergeant"). The City was, therefore, dismissed from the action. The Clerk of Court is directed to amend the caption accordingly.

Background[2]

On or about February 28, 2019, Malave was punched several times without reason, she says, by a fellow student at the Performing Arts and Technology High School in Brooklyn. *See* Third Am. Compl., Dkt. 12, ¶ 7. Others stood around watching the fight. *See* Video, Dkt. 30-2, at 0:00–0:03. Sergeant Austin, who was on duty as the school's safety officer, responded to the scene. Third Am. Compl. ¶ 8. When he arrived, he saw Malave charging at the other student, with her arms flailing in the air. *Id.* ¶ 9; Video at 0:02–0:04. Attempting to break up the fight, Sergeant Austin pushed Malave aside. Third Am. Compl. ¶ 10. Undeterred, Malave tried to push past Sergeant Austin to reach the other combatant, whom she labels the "attacker." *Id.* ¶¶ 9–11. Sergeant Austin stood between the two students and, placing both hands on Malave's midriff, pushed her back a second time, sending her flying backward onto the ground. *Id.*; Video at 0:04–0:05. She placed her hands out behind her to break her fall and landed in a seated position with her feet in the air. *Id.* at 0:05. While Malave was on the ground, Sergeant Austin

---

[2] The facts are drawn from the complaint and taken as true, with all reasonable inferences drawn in plaintiffs' favor, as they must be on a motion to dismiss. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). As to the exhibits submitted with the parties' briefing, the Court declines to convert the instant motion to one for summary judgment, so may consider only "statements or documents incorporated by reference, and documents on which the complaint heavily relies." *Singh v. Wells*, 445 F. App'x 373, 375 (2d Cir. 2011); *see also Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (courts may consider documents "integral" to complaint, such as "a contract, agreement, or other document essential to the litigation"). The Court will consider the video of the incident, which is incorporated by reference in the complaint. *See* Third Am. Compl. ¶ 14; *Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York*, No. 11-CV-329 (KAM), 2014 WL 4804869, at *3 (E.D.N.Y. Sept. 25, 2014). It will not consider plaintiff's medical records, which are nowhere referenced in the complaint, or affidavit, which seeks to inject new facts into the litigation. *See* Dkts. 30-3, 30-4; Malave Aff., Dkts. 34, 39; *Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (internal citation and quotation marks omitted)).

pointed at her and yelled something inaudible. *Id.* at 0:05–0:06. A young male bystander, presumably a student, then pushed Sergeant Austin, causing the officer to fall onto his hands and knees, though he stood back up within a second. *Id.* at 0:07–0:10. Sergeant Austin and a second officer on the scene then began handcuffing that person. *Id.* at 0:13–0:26. Meanwhile, Malave had also gotten back up and resumed fighting with the other student. *Id.* at 0:06–0:17. She then approached the person in handcuffs and the officers, who were repeatedly yelling "back up." *Id.* at 0:36–0:42. The incident was captured on a 42-second-long cell phone video, which ends at that point. *See* Third Am. Compl. ¶ 14; Video at 0:42. Malave does not allege that she was handcuffed, summonsed or arrested. *See generally* Third Am. Compl.

It is Sergeant Austin's second, harder push of Malave that is the subject of her excessive force claim. Malave contends that push, and her resulting fall, caused severe pain to her neck, back, chest, arms and left wrist. *Id.* ¶ 12. She sought orthopedic treatment and physical therapy. *Id.* ¶ 13.

<u>Legal Standard</u>

To overcome a Rule 12(b)(6) challenge, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). The district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). The district court may consider

documents that are attached to or referenced in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

## Discussion

The federal civil rights law, at 42 U.S.C. § 1983, creates a cause of action against "any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Malave contends that, by pushing her to the ground, Sergeant Austin violated her Fourth Amendment right to be free from unreasonable seizures and, simultaneously, violated her Fourteenth Amendment due process rights. Where a plaintiff brings an excessive force claim under both Amendments arising from the same conduct, the Court first determines whether the Fourth Amendment's explicit constitutional guarantees apply; if they do not, the Court looks to the Fourteenth Amendment's substantive due process protections. *See Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000); *Harrell v. Cty. of Nassau*, No. 10-CV-5894 (MKB), 2013 WL 5439137, at *4 (E.D.N.Y. Sept. 27, 2013).

I.  Fourth Amendment Seizure

Because the Fourth Amendment protects against "unreasonable searches and seizures," not all forms of unreasonable conduct, it only governs Malave's claim if Sergeant Austin's actions toward her constituted a seizure—a matter the parties dispute. *See* U.S. Const. amend. IV; *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998) ("[T]he first step in any . . . section 1983 claim predicated on the Fourth Amendment[] is to determine whether there has been a constitutionally cognizable seizure."); *Bogart v. City of New York*, No. 13-CV-1017 (NRB), 2016 WL 4939075, at *7 (S.D.N.Y. Sept. 6, 2016). Of course, "[n]ot every encounter between a police officer and an individual is a seizure implicating the Fourth Amendment's protections."

4

*United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990). A seizure occurs when an officer, either "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *see also Brower v. Cty. of Inyo*, 489 U.S. 593, 597, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989) (seizure requires "a governmental termination of freedom of movement through means intentionally applied").

As a threshold issue, operational control of school safety officers in New York City has migrated from time to time over the course of several decades. Throughout all of those incarnations, these officers were considered "peace officers" and they were not, at any time, considered "police officers." *See, e.g.*, *In re Victoria W.*, 953 N.Y.S.2d 554 (Fam. Ct. 2012) ("School safety agents are unarmed employees of the New York City Police Department School Safety Division, designated as peace officers." (citing N.Y. Crim. Proc. Law § 2.10(27)). Importantly, though they are of different status, these constitutional protections and the availability of a remedy under § 1983 apply to peace officers with equal vigor. *See, e.g.*, *Concepcion v. New York City Dep't of Educ.*, 836 F. App'x 27, 31 (2d Cir. 2020) (finding school safety agents may have used excessive force against student).

The core test for determining whether a seizure has occurred is "if, under the totality of circumstances, a reasonable person would have believed that he was not free to leave" or "'to ignore the police presence and go about his business.'" *Mara v. Rilling*, 921 F.3d 48, 70 (2d Cir. 2019) (first citing *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S. Ct. 1975, 1977, 100 L. Ed. 2d 565 (1988); then quoting *Kaupp v. Texas*, 538 U.S. 626, 629, 123 S. Ct. 1843, 1845, 155 L. Ed. 2d 814 (2003)). The test is objective, looking to the "reasonable person" instead of the individual's impressions or the officer's intent (except insofar as it is conveyed to the

5

individual). *Chesternut*, 486 U.S. at 574, 575 n.7. In making this determination, courts "take into account all of the circumstances surrounding the incident in each individual case," including the setting and police conduct. *Id.* at 572–73 (internal citations and quotation marks omitted). "Essentially, this inquiry is an objective assessment of the overall coercive effect of the police conduct." *Lee*, 916 F.2d at 819.

Malave contends that Sergeant Austin seized her when he pushed her backward onto the sidewalk, away from the fight. *See* Pl.'s Opp'n Mem., Dkt. 32, at 4–7; Video at 0:04–0:05. The video footage of the incident shows that Malave stayed on the ground for under four seconds. Video at 0:05–0:09. During that time, Sergeant Austin pointed at her and yelled something inaudible.[3] *Id.* at 0:04–0:05. As soon as Malave was back on her feet, she resumed fighting with the other student. *Id.* at 0:05–0:07, 0:14–0:17. Sergeant Austin turned his attention to handcuffing the bystander who had pushed him. *Id.* at 0:08–0:36. Malave's only other interaction with Sergeant Austin occurred when she voluntarily reapproached him after she had stopped fighting with the other student, and he directed her to stay back. *Id.* at 0:14–0:17, 0:36–0:42.

Although the Court, of course, analyzes Malave's claim based on the unique facts of her case, it notes that courts addressing similar claims have held that an officer's push was not a Fourth Amendment seizure, even where the individual was knocked over. Some similar cases

---

[3] Malave asks the Court to consider her affidavit, submitted with her opposition briefing, in which she claims Sergeant Austin yelled at her to "stay down." *See* Pl.'s Opp'n Mem. at 7; Malave Aff. ¶ 5. As noted, the Court may not consider this affidavit on a motion to dismiss. *See Red Fort Cap., Inc*, 397 F. Supp. 3d at 476; *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 483 (N.D.N.Y. 2019). Even if it could, and even if that allegation were sufficient to plausibly allege a seizure, her claim would be judged by the same legal standard. Both Fourth and Fourteenth Amendment excessive force claims require plaintiffs to show the officer's use of force was objectively unreasonable. *Lombardo*, 141 S. Ct. at 2241 n.2.

6

arise in the context of protests. In one, an officer struck a protester from across a police barricade, causing her to fall to the ground, though she got back up within 25 seconds. *Bogart*, 2016 WL 4939075, at *4. The court held that the protester was not seized, noting that she was "free to stay or leave the demonstration both before and after she was struck." *Id.* at *8. The court observed that "[a]lthough being struck and knocked down by a police officer may be a 'restraint on liberty' in the literal sense of falling to the ground involuntarily, it is not the kind of 'intentional acquisition of control' by police that implicates the Fourth Amendment," and warned that classifying it as such would essentially require treating all police-caused injuries as seizures. *Id.*; *see also Abujayyab v. City of New York*, No. 15-CV-10080 (NRB), 2018 WL 3978122, at *5 (S.D.N.Y. Aug. 20, 2018) (holding protester punched by police officer was not seized); *Tardif v. City of New York*, No. 13-CV-4056 (KMW), 2017 WL 3634612, at *4–5 (S.D.N.Y. Aug. 23, 2017) (same, where protester pushed over by officer was never arrested and remained free to leave).

Similarly, a corrections officer's push of a visitor toward the prison entrance and against a door was not a seizure. *Rodriguez v. Phillips*, 66 F.3d 470, 474 (2d Cir. 1995). Nor did officers seize a woman when they pushed her out of their way outside her home, or against their police car. *Webster v. City of New York*, 333 F. Supp. 2d 184, 196 (S.D.N.Y. 2004) (noting that she stood back up each time and made no allegations concerning her belief in her freedom to leave); *see also Lizardo v. Denny's, Inc.*, No. 97-CV-1234 (FJS) (GKD), 2000 WL 976808, at *10 (N.D.N.Y. July 13, 2000), *aff'd*, 270 F.3d 94 (2d Cir. 2001) (analyzing under Fourteenth Amendment claims of restaurant patrons who alleged officers "pushed and shoved them in the parking lot after they exited the [r]estaurant"); *Bove v. New York City*, No. 98-CV-8800 (HB), 1999 WL 595620, at *5 (S.D.N.Y. Aug. 6, 1999) (analyzing under Fourteenth Amendment the

7

claim of plaintiff beaten by officers).[4]

Especially given the backdrop of these precedents, Sergeant Austin's push of Malave, upon the totality of these circumstances, was not a seizure. A reasonable person in Malave's situation would have understood that she remained free to stay in or leave the area both before and after the push. Sergeant Austin did not hold, grab or otherwise detain Malave when she was on the ground. He yelled something and then turned away from her, leaving her free to get back to her feet within four seconds. Indeed, she understood so well that she had not been restrained that not only did she bounce back up in four seconds, but chose to use her freedom to resume the fight. *Cf. Abujayyab*, 2018 WL 3978122, at *5 (noting, in support of finding no seizure, that officer "moved away from the scene after punching plaintiff"). Pointedly, Malave was never handcuffed, questioned, issued a summons or arrested. *Cf. Woods v. City of New York*, No. 14-5866 (FB), 2016 WL 6236309, at *3 (E.D.N.Y. Oct. 25, 2016) (detention while issuing summons constitutes seizure); *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 270–71 (W.D.N.Y. 2016) (plaintiff handcuffed to bench was seized). In sum, Malave fails to adequately allege that a reasonable

---

[4] One key distinction is whether an officer grabbed, as opposed to pushed, the individual. For example, in *Salmon v. Blesser*, the Second Circuit held that a seizure occurred where an officer ejected plaintiff from a courthouse by grabbing his collar, twisting his arm behind his back and shoving him toward the door, thereby "intentionally restraining and controlling [his] movements." 802 F.3d 249, 254–55 (2d Cir. 2015). The court cited, in support, a Founding-era dictionary that defined "seize" as "[t]o take hold of; to grip[]; to grasp" and "to take possession of by force." *Id.* (quoting 2 Samuel Johnson, *A Dictionary of the English Language* (8th ed. 1799)); *cf. Terry*, 392 U.S. at 7, 19 n.16 (seizure occurred where officer grabbed plaintiff, spun him around and patted him down); *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) (officers seized plaintiff when they "grabbed him in a 'bear hug'"). The court distinguished this from scenarios involving only a verbal order to leave an area, or a verbal order "emphasized by a physical shove" but no grabbing. *See id.* at 251 (citing *Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994)), 255 (quoting Stephen E. Henderson, *"Move On" Orders as Fourth Amendment Seizures*, 2008 B.Y.U. L. Rev. 1, 16).

8

person in her situation would have felt unable to leave the area or to ignore the presence of school safety officers and go about her lawful business. *See Mara*, 921 F.3d at 70. She was not, therefore, seized by Sergeant Austin within the meaning of the Fourth Amendment.

II.     Fourteenth Amendment Claim

For plaintiffs like Malave, whose § 1983 claims arise "in the non-seizure, non-prisoner context, the substantive due process right to be free from excessive force is alive and well." *Rodriguez*, 66 F.3d at 477. In fact, Fourth and Fourteenth Amendment excessive force claims are judged by the same standard, which examines "whether the force was objectively unreasonable in light of the 'facts and circumstances of each particular case.'" *Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2241 n.2 (2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015)); *see also Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018).

A determination of reasonableness "requires a careful balancing of the nature and quality of the intrusion on the individual's [constitutional] interests against the countervailing governmental interests at stake," with the recognition that officers must often make split-second judgments in response to "tense, uncertain and rapidly evolving" circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1869, 104 L. Ed. 2d 443 (1989) (internal citations and quotation marks omitted). Courts must analyze the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," all while paying "careful attention to the facts and circumstances of each particular case." *Id.* In doing so, courts are guided by the following non-exhaustive list of factors:

> (1) the need for force, including the threat reasonably perceived by the officer and whether the plaintiff was actively resisting, (2) the relationship between the need and the degree of force used, (3) the extent of the plaintiff's injury, and (4) any effort made by the officer to temper or to limit the amount of force.

*Abujayyab*, 2018 WL 3978122, at *5–6 (citing *Edrei*, 892 F.3d at 537–38; *Kingsley*, 576 U.S. at 397).

First, as to Sergeant Austin's need to use force, Malave acknowledges in her pleadings that when Sergeant Austin "responded to the scene, he encountered plaintiff attempting to charge towards her attacker." Third Am. Compl. ¶ 9. Although plaintiff continues to mention that the other student had attacked her without provocation, she does not dispute that Sergeant Austin did not witness it. *Id.* ¶¶ 7–8. As confirmed by the video properly before the court on this motion, and viewed from the perspective of a reasonable police officer, from what Sergeant Austin did see, it appeared that Malave was the instigator. In fact, despite his presence, Malave kept trying to hit the other student. *Id.* ¶¶ 10–11; Video at 0:00–0:06. Indeed, she now concedes that Sergeant Austin "had probable cause to arrest [her] had he chosen to do so." Pl.'s Opp'n Mem. at 7. Adding to the chaos, they were surrounded by bystanders, one of whom would soon push Sergeant Austin to the ground and end up in handcuffs. Video at 0:07–0:26. Under these circumstances, even Malave agrees that "some degree of force was certainly reasonable" to further Sergeant Austin's "legitimate interest in preventing either of the two girls from continuing to fight." Pl.'s Opp'n Mem. at 9, 12.

Also significant are the circumstances that did not obtain. Malave's "was not a situation where a passive bystander or arrestee was idly standing by when she was met with gratuitous police force. [She] put herself into a violent situation, and any reasonable officer on the scene would have used force to remove her from it." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 407 (E.D.N.Y. 2011). Courts have, in fact, found it reasonable for a corrections officer to use some force to break up a fight between inmates and for a school security guard to use some force to break up a fight between students—both legitimate governmental objectives. *See, e.g.*,

10

*Barnes v. Harling*, 368 F. Supp. 3d 573, 593 (W.D.N.Y. 2019) (prison fight); *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 526–27 (E.D.N.Y. 2012) (school fight). So, too, was it reasonable for Sergeant Austin to use some force to stop the fight between Malave and the other student.

The home run question, of course, is whether the amount of force he used was reasonably related to the needs of the situation. Sergeant Austin was accompanied by a fellow officer, but that officer was not present at the precise moment he intervened. Video at 0:00–0:09. The fight involved only two students, though there were bystanders who could have joined in. *Id.* at 0:00–0:16. Malave appeared unarmed and was not trying to attack Sergeant Austin, but was persistently attempting to hit the other student. *Id*. Additionally, Malave emphasizes that she was seventeen years old and significantly smaller than Sergeant Austin, although her specific arguments as to their respective heights and weights have no basis in the pleadings. *See id.* at 0:00–0:06; Pl.'s Opp'n Mem. at 9, 12; *cf. Dancy v. McGinley*, 843 F.3d 93, 102, 114 (2d Cir. 2016) (noting plaintiff's age, seventeen, and size relative to defendant officer's). Nonetheless, as a court observed in an excessive force case brought by a woman pushed by officers during her arrest, "[t]he officers were, however, obviously in no position to formulate an equation taking into account [plaintiff's] body mass and the muscular force necessary to expel her from the room; they simply got her out of the way." *Rasmussen*, 766 F. Supp. 2d at 407. It appears likely that Sergeant Austin could have deterred Malave with less force, such as a lighter push or, as Malave posits, if he had "wrapped his arms around plaintiff, placed her on the ground and handcuffed her." Pl.'s Opp'n Mem. at 10. Nonetheless, "while it is possible that [plaintiff] did not need to be pushed in order to get [her] to move, as long as it was not unreasonable to push [her] . . . it does not matter that some less intrusive alternative would have done the job."

11

*Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009). Pushing the unrelenting Malave in an effort to end a chaotic fight between students was reasonable. Further, although the push was quite forceful, sending Malave flying backward onto the ground, she was able to stand up and continue fighting within four seconds. In all, the use of force appears proportionate to the needs of the situation.

Seeking to open a separate theater of attack on plaintiff's excessive force contentions, Sergeant Austin relies on Malave's medical records and out-of-circuit cases to claim she suffered only a sprained wrist, which he argues is a *de minimis* injury. Def.'s Mem. at 11. It is true that a *de minimis* use of force, causing only *de minimis* harm, rarely suffices to state a constitutional claim. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "The law of this circuit, however, does not appear to place a demanding requirement on excessive force plaintiffs to demonstrate injury." *Felmine v. City of New York*, No. 09-CV-3768 (CBA) (JO), 2011 WL 4543268, at *19 (E.D.N.Y. Sept. 29, 2011) (collecting cases). Despite the efforts of both parties to rely upon them to resolve the *de minimis* argument, Malave's medical records are not properly before the Court on this motion. The complaint does not reference, quote, attach or integrate them. *See Chambers*, 282 F.3d at 152–53; *Corwell v. Westchester Cty.*, No. 19-CV-3049 (VB), 2020 WL 3960985, at *5 (S.D.N.Y. July 13, 2020) (declining to consider medical records); *Pendergraph v. City of Syracuse*, No. 19-CV-291 (NAM) (TWD), 2020 WL 777254, at *1 (N.D.N.Y. Feb. 18, 2020) (same). At any rate, more importantly, the complaint alleges that by pushing Malave to the ground, Sergeant Austin caused her severe neck, back, chest, arm and wrist pain, for which she sought orthopedic treatment and physical therapy. Third Am. Compl. ¶¶ 12–13. These allegations, taken as true, describe more than *de minimis* injury. *See Tardif*, 2017 WL 3634612, at *5. At the same time, however, not every injury is a constitutional wrong,

and courts must "preserve the constitutional proportions of claims, lest the Constitution be demoted to . . . a font of tort law." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002); *see also Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991). Plausibly pleaded, that description of her injuries is deemed accurate for purposes of this motion.

Last, the Court examines whether Sergeant Austin tried to temper or limit the amount of force he used. He made an initial attempt to break up the fight using less force, pushing Malave away from the other student without sending her to the ground. Third Am. Compl. ¶ 10. He was unsuccessful; Malave tried to push past him to resume fighting. *Id.* ¶ 11. As Malave admits, and as the video bears out, she remained "clearly excited" and "out of control." Pl.'s Opp'n Mem. at 9, 13. Only then did Sergeant Austin push her, much harder, a second time. Third Am. Compl. ¶ 11.

Considering the totality of the circumstances, and viewing Sergeant Austin's acts from the perspective of a reasonable officer on the scene, without the benefit of hindsight, the Court holds that his use of force was objectively reasonable. Although a jury might find it possible, and preferable, for Sergeant Austin to have used less force against Malave, that does not make his actions unreasonable. Instead, "[p]olice officers must be entitled to make a reasonable selection among alternative techniques." *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015). His push—a second effort to stop an unrelenting student from hitting her peer—was one such reasonable technique. As is often said, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth [or Fourteenth] Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.

1973)). That is the case here. Accordingly, Malave's excessive force claim is dismissed.[5]

III.     Leave to Amend

Plaintiff requests yet again leave to amend her complaint, this time to add the allegation that Sergeant Austin yelled at her to "stay down" after pushing her. *See* Pls.' Opp'n Mem. at 7. "Generally, leave to amend should be 'freely given.'" *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). This is especially so of complaints alleging civil rights violations. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). On the other hand, "leave to amend a complaint may be denied when amendment would be futile," such that the amended complaint could not survive a motion to dismiss. *Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006). In assessing the futility of amendment, the Court may consider allegations raised for the first time in plaintiffs' opposition briefing. *See Sheppard v. United States Tennis Ass'n Inc.*, No. 17-CV-5719 (AMD) (SMG), 2018 WL 3941941, at *4 n.4 (E.D.N.Y. Aug. 16, 2018); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015).

Malave's proposed amendment would be futile because her allegations regarding Sergeant Austin's verbal commands go only to the issue of whether she was seized within the meaning of the Fourth Amendment. Yet the standard governing the use of force is the same regardless of whether the Court proceeds under the Fourth or Fourteenth Amendments: either way, the Court asks whether the force used was objectively reasonable. *See Lombardo*, 141 S. Ct. at 2241 n.2. Having decided that it was, and finding no indication that amendment would

---

[5] As a result, the Court need not address defendant's qualified immunity argument, though had it, the result would surely be unchanged. *See Bancroft*, 672 F. Supp. 2d at 406 (where officer's "single shove" of plaintiff was not excessive, "the officer or officers who pushed [plaintiff] would at a minimum be cloaked with qualified immunity").

alter this outcome, the Court denies leave to amend as futile.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss is granted and the complaint is dismissed with prejudice.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
July 31, 2021

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge